**William F. BROOKS, Sr., Plaintiff,**

v.

**Saul SAVITCH, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 12, 1989.
Decided: Nov. 1, 1989.

**1330**

Ann Joyce Letcher, and Melvyn I. Monzack of Walsh & Monzack, P.A., Wilmington, for plaintiff.

Elwyn Evans, Jr., and Jeffrey M. Boyer of Evans & Evans, Wilmington, for defendant.

1. Ten *Del.C.,* § 8106 states, in pertinent part, as follows: "No action to recover a debt not evidenced by a record or an instrument under seal ... shall be brought after the expiration of 3 years from the accruing of the cause of action."

## OPINION

BARRON, Judge.

This case comes before the Court on Defendant's Motion to Dismiss the Complaint pursuant to Superior Court Civil Rules 9(f) and 12(b)(6) on the grounds that Plaintiff's claim is time barred under 10 *Del.C.,* § 8106.[1] A defense predicated on a statute of limitations may be brought by motion to dismiss when the complaint itself shows that the action was not brought within the statutory period. *Patterson v. Vincent,* Del.Super., 61 A.2d 416 (1948). With the exception as to whether the parties herein occupied the status of comakers or accommodation makers on the promissory note, the facts in this case are not in dispute. In a motion to dismiss, the allegations contained in the pleadings of the opposing party are admitted for purposes of the motion. *Fagnani v. Integrity Finance Corp.,* Del.Super., 167 A.2d 67 (1960). The Court will therefore decide Defendant's motion on the assumption that the parties were co-accommodation makers on the promissory note.

### I.

In this action Plaintiff seeks contribution from Defendant in the amount of $150,000. This amount represents one half of a $300,000 loan made by Delaware Trust Company (DTC) to Savbrook, Inc., which was a corporation wholly owned in equal shares by the parties herein. The $300,000 loan was evidenced by a promissory note executed under seal on May 7, 1979 by Plaintiff and Defendant in their individual capacities, by Plaintiff on behalf of Savbrook, Inc., and another individual not named as a party to this action.[2] The note reveals that all signatories thereto signed as "makers" of the note and that each was jointly and severally liable to DTC for payment thereon.

On December 31, 1980, Plaintiff paid the full $300,000 face amount of the note to

2. Given the Court's decision on this motion to dismiss, it is unnecessary to discuss how the signing of two other individuals besides Plaintiff and Defendant would affect Defendant's proportionate share of the payment made by Plaintiff.

DTC. It is not disputed that to date, Defendant has not contributed his proportionate share of the $300,000 payment made to DTC by Plaintiff nor is it disputed that both parties benefitted equally from the proceeds of the original loan. On April 11, 1989, Plaintiff commenced this action seeking contribution in the amount of $150,000 from Defendant. On June 15, 1989 Defendant filed the instant motion to dismiss, claiming that because Plaintiff's cause of action for contribution arose more than eight years ago when he paid DTC on the note, this action is time barred pursuant to 10 *Del.C.*, § 8106. In opposition to Defendant's motion, Plaintiff contends that his cause of action arises on the promissory note and as such, upon a debt evidenced by an instrument under seal. Based on this theory, Plaintiff contends that § 8106 preserves rather than bars his action for contribution.

The fundamental issue upon which the Court's decision on this motion rests is whether or not Plaintiff's cause of action for contribution arises on the note or upon a separate agreement between the parties that both would be equally responsible for payment to DTC. More specifically, if by paying the note, Plaintiff becomes subrogated to the rights of DTC in a contribution action against Defendant, his cause of action would be upon a sealed instrument and as such would not be time barred by the three year limitation period set forth under § 8106. See *Garber v. Whittaker*, Del.Ch., 2 A.2d 85 (1938), *Monroe Park v. Metropolitan Life Insurance Company*, Del.Supr., 457 A.2d 734 (1983). If, however, Plaintiff's cause of action is not on the note, but rather on an independent right to contribution which arose on December 31, 1980, when he paid more than his proportionate share, the three year limitation period set forth in § 8106 would bar this action for contribution.

## II.

Article 3 of the Uniform Commercial Code, 6 *Del.C.*, § 3–101 *et seq.* sets forth, *inter alia*, the statutory law governing the rights and remedies of parties to commer-

cial paper. Section 3–415 in particular deals with the contract of an accommodation maker who signs an instrument. The rights of an accommodation maker who pays an instrument are set forth under 6 *Del.C.*, § 3–415(5). That subsection provides as follows:

> An accommodation party is not liable to the party accommodated and if he pays the instrument has a right of recourse on the instrument against such party.

■ For purpose of the Court's decision upon this motion to dismiss, the critical portion of this subsection is that which grants the accommodation party a right of recourse on the instrument against the *party accommodated*. An accommodation party is one who signs an instrument in any capacity for the purpose of lending his name to another party to it. 6 *Del.C.*, § 3–415(1). The party accommodated is the one to whom the credit of the accommodation party is loaned. R. Anderson, *Uniform Commercial Code*, § 3–415:37 citing *Brown County Cooperative Assoc. v. Rasmussen–King Cattle Co.*, (1980, S.D.) 300 N.W.2d 265. The fact that the accommodation party has recourse on the instrument against the party accommodated is consistent with the fact that an accommodation party has the status of a surety with respect to the accommodated party. See Anderson, § 3–415:24. When a surety discharges an obligation of his principal, the surety becomes entitled by right of subrogation, to whatever security the creditor has for enforcement of his claim against the principal or to all the rights ... means or remedies which the creditor has for enforcing payment against the principal. 11 Am.Jur.2d., *Bills and Notes*, § 549. The surety's obligation is said to be not an original and direct one for the performance of his own act, but rather accessory or collateral to the obligation contracted by the principal. 74 Am.Jur., *Suretyship*, § 1.

■ In this context, it is apparent that section 3–415(5) does not contemplate a situation like the case at hand where the Plaintiff and Defendant executed the note as co-accommodation makers. Section 3–415(5) addresses itself to the accommoda-

tion party in the singular and makes no provision for the situation in which there are two or more accommodation parties who are jointly or jointly and severally liable. UCC 3–415 applies only to the relationship between the accommodation party and the party accommodated. It does not regulate the obligation of contribution between accommodation parties. Anderson, § 3–415:43 citing *Daigle v. Chaisson,* La. App. 396 So.2d 573 (1981). The concept of contribution between accommodation parties is not declared by the Code. It was established by pre-code law and has not been displaced. Anderson § 3–415:43 citing *Fithian v. Jamar,* 286 Md. 161, 410 A.2d 569 (1979). As the foregoing analysis and the clear language of the statute indicate, Plaintiff would have to establish that he was the accommodating party and Defendant was the party accommodated in order to acquire a cause of action on the note pursuant to § 3–415(5). There is no basis in law or in fact for the Court to conclude that Plaintiff acted as the accommodating party and Defendant the party accommodated. The complaint in this case, as well as the promissory note and Plaintiff's affidavit, reveal quite to the contrary that the parties herein were co-accommodation makers on the note. Because the status of the parties *inter se* is critical to the application of § 3–415(5) and because the Court finds that Plaintiff did not sign in order to accommodate Defendant, the Court concludes therefore that § 3–415(5) does not apply to the case *sub judice* and the Court must look elsewhere to determine the source of Plaintiff's cause of action.

### III.

The parties have not cited, and the Court has not found, any Delaware cases which deal directly with the right of an accommodation maker who pays a debt upon which he is jointly liable with another accommodation maker to obtain contribution from his co-accommodation maker for the amount paid beyond his proportionate share. This

issue however has been dealt with to a limited extent, in other jurisdictions.

In the case of *Bell v. Kleinberg,* 102 Ga.App. 623, 117 S.E.2d 262 (1960), the Court of Appeals of Georgia was presented with an action to recover one half of the balance due on a promissory note upon which the Plaintiff and Defendant were co-accommodation makers. The Defendant contended, as does the Defendant in this case, that Plaintiff's cause of action was barred by the statute of limitations applicable under general law and not that set forth on the face of the instrument. The Court held that the right to contribution among or between accommodating parties rests on an implied promise to reimburse proportionately under general law and that the statute of limitations relating thereto is applicable in such an action. *Id.* 117 S.E.2d at 263. In the case of *Litwin v. Barrier,* 6 Kan.App.2d 128, 626 P.2d 1232 (1981), Plaintiff and Defendant executed a note as joint obligors which Plaintiff ultimately paid in full. Plaintiff paid the note in October, 1972 and in July, 1977 filed suit seeking to recover one half the amount paid from Defendant.[3] The issue in *Litwin* was whether or not Plaintiff's cause of action was on the note, in which case Kansas applied a five year statute of limitations, or whether it was an action for contribution to which a three year limitation period applied. The Court held that Plaintiff's action was not on the note. The Court cited with approval the trial court's findings and conclusions, among them being the following:

G. The Court does find that at the time payment of the note was made by the plaintiff on October 30, 1972, a cause of action based on a theory of contribution arose and accrued in his behalf. However, the Court further finds that such a cause of action is based upon an implied obligation not in writing and that, accordingly, the right to maintain such a cause of action is governed by the three (3) year statute of limitations set forth in K.S.A. 60–512. The Court finds that

---

**3.** Plaintiff originally sought to recover the entire amount paid but later concluded that Defendant

would be entitled to set-off one half of that amount.

since this action was filed on July 29, 1977, any cause of action for contribution has been barred by the running of the three-year Statute of Limitation set forth in K.S.A. 60–512.

*Id.* 626 P.2d at 1234.

The Court also went on to conclude:

The general rule as set forth in C.J.S. is: '[P]ayment in due course of a promissory note by one of several joint makers to the payee or holder extinguishes the instrument and discharges the liability of the other makers thereon. * * * Because payment by one joint maker discharges the instrument ... the joint maker who makes the payment cannot sue his comakers on the note. ... The remedy of the maker making the payment in such a case is to sue for contribution.' 10 C.J.S., *Bills and Notes,* § 449, pp. 985–986.

*Id.* 626 P.2d at 1234.

Not all cases touching the issue are in accord. In the case of *Lindsey v. Zeller,* 10 Kan.App.2d 4, 690 P.2d 394 (1984), the Kansas Court of Appeals was presented with a situation similar to that presented in the instant case. In *Lindsey,* the Plaintiff and Defendant were both accommodation makers of a promissory note executed in order to enable Plaintiff's daughter and Defendant's son to obtain a loan. Plaintiff was ultimately required to pay the loan in full and sought contribution for one half of the amount paid from Defendant. Here again, the issue was whether or not Plaintiff's cause of action for contribution arose on the note or otherwise and which statute of limitations applied to that cause of action. In *Lindsey,* the Court declined to follow *Litwin v. Barrier, supra,* and found that Plaintiff's cause of action was on the note. The Court chose to distinguish *Litwin* on the grounds that the parties in *Litwin* were comakers and not accommodation makers and that *Litwin* implied that an accommodation maker would be entitled to sue on the note. The Court further found that U.C.C. § 3–603(2) gives Plaintiff, upon payment of the note, the rights of a transferee and that under U.C.C. § 3–201, transfer of the instrument vests

in the transferee such rights as the transferee has therein. 690 P.2d at 396. The Court in *Lindsey* also specifically declined to limit the application of § 3–415(5) to actions against the accommodated party, citing *Halpin v. Frankenberger,* 231 Kan. 344, 644 P.2d 452 (1982). That case held that a surety "on paying the obligation of his principal is entitled to be subrogated to the rights of the creditor ... for enforcing payment against the principal debtor or against other sureties ..." While the Court in *Lindsey* specifically addressed an action for contribution between two accommodation makers, I cannot agree with portions of the analysis used by the Kansas Court in reaching its decision. Specifically I do not agree with that Court's interpretation of the holding in *Litwin v. Barrier, supra,* and its application of U.C.C. § 3–603(2). As stated earlier, the Court in *Lindsey* distinguished *Litwin v. Barrier* on the grounds that the parties in *Litwin* were comakers and not accommodation parties. The Court then stated *"Litwin* clearly implies that an accommodation party would be entitled to sue on the note." 690 P.2d at 396. The only portion of the *Litwin* decision that could be construed as an implication that an accommodation party could sue on the note is that portion where the Court states:

For Appellant's theory that he is a holder entitled to sue on the note to be valid, he would have had to execute the note as an accommodation party [KSA 8–3–415(5)] ... 626 P.2d at 1235.

As I read this language, the *Litwin* Court was simply reiterating the fact that § 3–415(5) gives the accommodating party who pays the instrument the right to sue the party accommodated on the note. Nothing in the language of the *Litwin* decision indicates to me that the Court was extending the applicability of § 3–415(5) to actions between co-accommodation parties.

The second portion of the *Lindsey* Court's analysis with which I disagree is that Court's application of U.C.C. § 3–603(2) to an action for contribution between co-accommodation makers. Section 3–603(2) provides:

Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such person gives him the rights of a transferee.

The case law and the Code commentary indicate that § 3–603(2) is not applicable to contribution actions between individuals who were primarily liable on a note. Courts construing § 3–603(2) have limited its application to cases in which a third party, who was not an original signer of the note, paid the note and sought reimbursement from the original obligors. *Griffith v. Griffith,* 250 Ark. 845, 467 S.W.2d 737 (1971); *McGrew v. Mix,* 112 Ill.App.3d 14, 67 Ill.Dec. 738, 445 N.E.2d 30 (1983); *Collection Control Bureau v. Weiss,* 50 Cal.App.3d 865, 123 Cal.Rptr. 625 (1975).

Moreover as Defendant's counsel points out in the case of *Crimmins v. Lowry,* Tex.Supr., 691 S.W.2d 582 (1985), the Court applied § 3–603(2) to determine the rights of coparties to a note. That case however was criticized by Professor White who stated "It seems likely that the Texas ... Court is misinterpreting the Uniform Commercial Code and is granting rights to the comakers that the drafters never intended." J. White and R. Summers, *Uniform Commercial Code* at 669 (3rd ed. 1988). In addition, the Comments to the Code reveal that § 3–603(2) is intended to modify the provisions of the Negotiable Instruments Law which addressed the practice of "payment for honor". Payment for honor provided a method by which a third party might intervene to protect the credit of the drawer and at the same time protect his own rights. Under prior law, payment by third persons secondarily liable could be deemed a mere voluntary payment unless attested by a notorial act of honor. *McGrew, supra.* Section 3–603(2) is designed to confer to third parties who pay the instrument the same rights enjoyed by an accommodation maker against the party accommodated. The key is that section 3–603(2) is intended to and has generally been applied to the rights of third party payors.

■ In the case *sub judice* Plaintiff and Defendant were joint obligors on the instrument in question. Whether they are called co-accommodation makers or comakers is of little moment to the ultimate issue at hand. What is important is that they received the same benefits and incurred the same obligations at the same time and out of the same transaction. The Court cannot therefore find that Plaintiff executed the note to accommodate Defendant which, under § 3–415(5), would permit the Plaintiff to sue Defendant as a surety on the note. The Court also finds that when Plaintiff paid the note in full on December 31, 1980, the note was discharged by that payment. Unless the maker is in fact a surety for another party to the instrument ... his payment to the holder in exchange for the cancelled note discharges not only his own obligation but also that of all other parties to the instrument. Bender's Uniform Commercial Code Service, § 5.04(1), p. 5–18 (1988). Plaintiff's only remedy at that point was to sue Defendant for contribution. See Anderson, § 3–603:4 citing *Quartana v. Jenks,* La.App., 355 So.2d 607 (1978); *Awed v. Marsico,* 27 Mass.App.Ct. 1140, 538 N.E.2d 43 (1989). Plaintiff's cause of action for contribution arose at that time on Defendant's promise, whether expressed or implied, to reimburse Plaintiff for his proportionate share of the joint obligation incurred by both.

## IV.

The Court has no doubt that Defendant had an obligation to reimburse Plaintiff for his proportionate share of the note and that as a result of this decision, Defendant will not be legally required to discharge that obligation. While Plaintiff had ample time to exercise his rights, he waited more than eight years to do so. As inequitable as it may seem, he cannot now be heard to complain. Statutes of limitations are intended to exact diligence in prosecution of litigant's claims. *Husband (G.T.B.) v. Wife (G.R.),* Del.Supr., 424 A.2d 12 (1980). Statutes of limitations are intended to prevent enforcement of stale claims and are based

on reasons of sound policy ... intended to exact diligence. *Bovay v. H.M. Byllesby*, Del.Ch., 29 A.2d 801 (1943).

Because the Court finds that Plaintiff's cause of action for contribution was not upon an instrument under seal but rather upon Defendant's promise to reimburse Plaintiff which arose at the moment Plaintiff paid more than his proportionate share of the joint obligation, the Court holds that Plaintiff's cause of action is barred by 10 Del.C., § 8106. Defendant's Motion to Dismiss is therefore Granted.

It Is So ORDERED.